UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MEGAN G.,

        Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

---

22-CV-00289-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 17)

Plaintiff Megan G.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 11) is granted, and defendant's motion (Dkt. No. 15) is denied.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for DIB and SSI on January 31, 2017, with an alleged onset date of December 1, 2015. (Administrative Transcript ["Tr."] 15, 189-202). The claims were ultimately denied after a hearing before an administrative law judge ("ALJ"), and the Appeals Council ("AC") denied Plaintiff's request for review. (Tr. 1-6, 12-31). Plaintiff appealed to this Court and the parties stipulated to a remand on December 22, 2020. (Tr. 766-68). The AC ordered a new hearing on April 29, 2021. (Tr. 771-75).

On November 17, 2021, ALJ Stephan Bell held a telephone hearing, during which Plaintiff participated, with counsel. (Tr. 716-39). A vocational expert ("VE") also testified at the hearing. The ALJ issued an unfavorable decision on December 17, 2021. (Tr. 690-715). This action followed.

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v.*

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

*Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The

Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he

or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.*

§§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is not disabled.  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform."  *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

Preliminarily, the ALJ found Plaintiff's last insured date to be September 30, 2017. (Tr. 696).  At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 1, 2015, the alleged onset date. (Tr. 696).  At step two, the ALJ found that Plaintiff has the following severe impairments: left ankle status post tarsal tunnel release; left knee plica shelf syndrome and ganglion cyst; bipolar disorder; depressive disorder not otherwise specified; cocaine abuse; alcohol abuse; asthma; and bilateral carpal tunnel syndrome status post 2014 right-sided release. (Tr. 696-98).  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 698-99).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work,

> except lifting and carrying ten pounds occasionally and less than ten pounds frequently; sitting for six hours, standing for two hours, and walking for two hours; pushing and pulling as much as she can lift and carry; frequently reaching overhead and in all directions with the left arm; occasionally handle

- 6 -

and finger items frequently with the left hand; climbing ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally; never work at unprotected heights, never moving mechanical parts, and never operating a motor vehicle; occasionally work in dust, odors, fumes and pulmonary irritants, and in vibration occasionally; perform simple, routine tasks and make simple work-related decisions; occasionally interact with supervisors and coworkers; and, never interact with the public.

(Tr. 699-706). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 706). At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 706-07). Therefore, the ALJ found that Plaintiff is not disabled. (Tr. 707-708).

IV.   *Plaintiff's Challenge*

Plaintiff argues, *inter alia*, that the case must be remanded because the ALJ inadequately evaluated the medical opinion of Plaintiff's treating physician. The Court agrees.

Social Security regulations require ALJs to "evaluate every medical opinion [received]" from both treating and non-treating sources. 20 CFR §404.1527(c).[3] The Second Circuit has held that "the opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999). If an ALJ does not assign controlling weight to the opinion, he or she must "explicitly consider" the "treating physician rule," or as the Second Circuit has described it, the "nonexclusive '*Burgess* factors.'" *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (citing *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)); *Scheurer v. Berryhill*, 269 F. Supp. 3d 66, 85 (W.D.N.Y.

---

[3] The defendant does not dispute that the "treating physician rule" applies in this case.

- 7 -

2017). These factors are: "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Scheurer*, 269 F. Supp. 3d at 85; *Goldthrite v. Astrue*, 535 F.Supp.2d 329, 334 (W.D.N.Y. 2008) (citing 20 CFR § 416.927). Remand is required when an "ALJ fails to adequately evaluate the weight of a [treating physician's] medical opinion in light of [these] factors." *Scheurer*, 269 F. Supp. 3d at 85.

Here, Plaintiff's treating orthopedic surgeon, Dr. Matthew Landfried, M.D., issued a medical opinion on February 12, 2021.  (Tr. 1347-50).  He found that Plaintiff's symptoms included left-foot neuropathy with pain that is stiff and burning. He opined that: Plaintiff could not stand for long periods of time and could walk for only short periods; her pain or other symptoms would frequently (34 to 66 percent of the time) interfere with her ability to perform even simple work tasks; she could walk no more than a quarter of a city block without rest or severe pain; she could stand for only 15 minutes at a time without having to sit or walk around; she could stand/walk for only two hours in an eight-hour workday; she would have to walk every 30 minutes;  and  she needs a cane or other assistive device when engaging in occasional standing or walking.

The ALJ gave Dr. Landfried's opinion "little weight" because,

> the diagnosis is not supported by the record and the doctor appears to rely upon the claimant's self-report. One month before Dr. Landfried signed this statement, the claimant's treating neurologist noted that the claimant's gait and stance were normal, the electrodiagnostic tested revealed no abnormalities, and ruled out recurrent tarsal tunnel syndrome, peripheral neuropathy, or radiculopathy.

(Tr. 705).  The ALJ did not explicitly consider the treating physician rule in his decision.

The defendant concedes that the ALJ committed error by not explicitly considering the treating physician rule (Dkt. No. 15-1, p. 12), but argues that such error was harmless as the ALJ gave "good reasons" for discounting Dr. Landfried's opinion. The Court disagrees for several reasons.

First, the ALJ failed to discuss the frequency, length, nature, and extent of Dr. Landfried's treatment of the Plaintiff, which is an important factor in this case. Dr. Landfried was Plaintiff's treating orthopedic surgeon and had performed multiple knee surgeries on her during his multiyear period of treatment of her. (Tr. 555-56, 645). The ALJ did not explicitly consider the treating relationship, he only mentioned it in passing. (Tr. 705). Merely acknowledging the existence of the treatment relationship is not the same as explicitly considering this factor. He should have addressed this factor.

Next, the ALJ's assertion that Dr. Landfried's opinion was not supported by the record is too vague and conclusory to constitute a "good reason" for rejecting the treating physician's opinion. The Second Circuit has held that an ALJ's "conclusory one sentence explanation[s] …[do] not fulfill [an ALJ's] obligation to provide 'good reasons[.]'" *Morgan v. Colvin*, 592 F. App'x 49, 50 (2d Cir. 2015) (remanding for the ALJ to "set forth with greater clarity the reasons he gave little weight to" the treating source opinion); *Rugless v. Comm'r of Soc.Sec.*, 548 F. App'x 698, 700 (2d Cir. 2013) ("The ALJ gave only a conclusory explanation of why [the treating source] opinion regarding appellant's ability to lift 10 lbs. is inconsistent with the record."). Simply stating that the treater's opinion is not supported by the record is too conclusory to satisfy the treating physician rule.

Further, the ALJ's rejection of the treating physician's opinion because it was inconsistent with a single note by Plaintiff's treating neurologist is not a "good reason." In

*Estrella v. Berryhill*, the Second Circuit remanded the decision of the ALJ because the ALJ relied on "two cherry-picked treatment notes" in rejecting the treating physician's opinion, holding that these notes did not provide "good reasons" for minimalizing the treating physician's opinion. *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019). Here, the ALJ cited to a single treatment note to reject Dr. Landfried's opinion. (Tr. 705).

Next, the ALJ also purported to reject Dr. Landfried's opinion because the diagnosis "appears to rely upon [Plaintiff's] self-report." (Tr. 705). The ALJ does not explain, however, how he came to this conclusion, rather it appears he impermissibly relied on his own lay opinion over that of a physician to reject a diagnosis. This was improper. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Wagner v. Sec'y of Health &Hum. Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (citations omitted)).

Finally, and perhaps most problematic, is that the ALJ failed to recognize that Dr. Landfried is a specialist, an orthopedic surgeon. In his decision, the ALJ referred to Dr. Landfried as Plaintiff's "treating primary care physician[.]" (Tr. 705). The ALJ was required to "'explicitly consider' 'whether the [treating] physician is a specialist.'" *Cabrera v. Comm'r of Soc. Sec.*, No. 16CIV4311ATJLC, 2017 WL 3686760, at *3 (S.D.N.Y. Aug. 25, 2017).[4]

In sum, in rejecting Dr. Landfried's opinion, the ALJ failed to explicitly consider the treating physician rule and failed to offer "good reasons" for the rejection. Thus, the case must be remanded.[5]

---

[4] The defendant offers several additional arguments as to why there were "good reasons" to reject Dr. Landfried's opinion, but these reasons were not stated by the ALJ. They are *post hoc* rationalizations and may not be relied upon by the Court. *Black v. Berryhill*, No. 17-CV-557, 2018 WL 4501063, at *6 (W.D.N.Y. Sept. 20, 2018).

[5] The Plaintiff also argues that the case must be remanded because: (1) the ALJ did not rely on any medical opinion evidence in crafting Plaintiff's mental RFC; and (2) the ALJ failed to properly consider Plaintiff's substance abuse. The defendant should address these arguments on remand. The Court notes that much

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is granted and defendant's motion for judgment on the pleadings (Dkt. No. 15) is denied. The case is remanded for further administrative proceedings.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   April 30, 2024
         Buffalo, New York

                                         MICHAEL J. ROEMER
                                         United States Magistrate Judge

---

of the medical opinion evidence that the ALJ relied upon is now about seven years old. On remand, the defendant should secure updated or new medical opinion evidence.